IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:23-CR-128-TAV-JEM |
| | ) | |
| ALEXANDER GLENN ROSS, | ) | |
| | ) | |
| Defendant, | ) | |

**ORDER OF DETENTION**

This case is before the undersigned on petitions by the United States Probation Office [Doc. 68] and the Government [Doc. 83] to revoke Defendant Alexander Ross's pretrial release. *See* 28 U.S.C. § 636(b). Defendant Alexander Glenn Ross filed a response in opposition [Doc. 87].

On January 18, 2024, Defendant first appeared in the Middle District of Florida, where he was released on conditions, including that he not violate any federal, state, or local law; that his travel is restricted to the Middle District of Florida and this district for court-related purposes; that he participate in location monitoring with GPS monitoring equipment; and that he not pilot nor be a passenger on any private aircraft [Doc. 7 pp. 4–7]. Notwithstanding his travel restrictions, the court permitted Defendant, a Canadian citizen, to travel within the United States with the approval of his supervising pretrial services officer [*Id*. at 5]. On February 5, 2024, the undersigned arraigned Defendant and permitted his release on the same conditions [Doc. 16].

The Government now asks the Court to revoke Defendant's pretrial release, asserting that he has committed federal and state crimes, he has violated his travel restrictions by traveling to Wisconsin and Michigan without permission, and he was a passenger in a private aircraft [Doc. 83 pp. 1–2, 9; Doc. 68 p. 2]. Defendant denies the alleged violations and asks the Court to return him to pretrial release [Doc. 87 pp. 1, 4].

The parties appeared before the undersigned on September 25, 2024, for a revocation hearing. Assistant United States Attorneys Suzanne H. Sullivan and Anne-Marie Svolto appeared on behalf of the Government. Attorney Troy L. Bowlin, II, represented Defendant Ross, who was also present. The Court has considered the exhibits and arguments of the parties. For the reasons stated herein, Defendant's pretrial release is **REVOKED**, and Defendant Ross is **DETAINED** pending further proceedings in this case.

I.  BACKGROUND AND EVIDENCE FROM REVOCATION HEARING

On December 20, 2023, the Grand Jury returned an Indictment charging Defendant and James Markey[1] with conspiring to falsify material facts concerning aircraft parts from at least April 15, 2022, through at least February 27, 2023 (Count One) [Doc. 3 ¶ 10]. Defendant Ross also allegedly engaged in fraud involving aircraft parts from April 15, 2022, through at least June 21, 2022 (Count Two), wire fraud on May 6, 2022 (Count Three), and money laundering on June 21, 2022 (Count Four) [*Id*. ¶¶ 22–26]. These allegations arise of Defendant's sale of an airplane N6522Q to a customer in Knoxville, Tennessee [*Id*. ¶¶ 14–21]. The Indictment alleges that Defendant knew the logbook for N6522Q contained false entries for inspection and maintenance [*Id*. ¶¶ 17–19] and concealed from the purchaser that N6522Q had an expired filter and a non-functional emergency locator transmitter [*Id*. ¶ 22].

On August 9, 2024, the undersigned issued an arrest warrant for Defendant based upon a Petition for Action on Conditions of Release submitted by Defendant's supervising officer in this district, United States Probation Officer Shauna McCullough-Walker [Doc. 68 pp. 2–3]. In the petition, Officer McCullough-Walker alleges that on August 9, 2024, the Ninth Judicial Circuit Court of Osceola County, Florida, issued an arrest warrant for Defendant for a scheme to defraud

---

[1]  The Court severed Defendant Markey for a separate trial [Doc. 90].

over $50,000 and theft of over $100,000 both related to Defendant's sale of an airplane that was in disrepair and could not be flown [*Id*. at 2]. According to the petition, the conduct in the Florida case began before Defendant's arrest in this case but continued after his release [*Id*.].

In addition, Officer McCullough-Walker alleges that Defendant traveled outside of the Middle District of Florida without permission:

> On or about August 5, 2024, the defendant provided a copy of a Delta flight itinerary to USPO Charles Sweat for travel from Atlanta, Georgia, to Chicago, Illinois, for that same date. Defendant Ross failed to provide his complete travel plans to the officer, including his return date. On August 6, 2024, USPO Sweat checked his GPS monitoring device and noticed [Defendant] was no longer in Chicago, Illinois, and was traveling at a high rate of speed, commonly associated with air travel. The officer checked FlightAware, a website that displays public flight information and confirmed an aircraft was currently flying on a route matching the GPS coordinates of the defendant. Defendant Ross did not have permission to leave Chicago or to travel on another aircraft at that time.

[*Id*.]. When Defendant landed in Ontonagon, Michigan, he was arrested on the Osceola County, Florida warrant [*Id*.]. According to the Petition, Defendant is a Canadian citizen, has substantial ties to Canada, and is in this country on a tourist Visa [*Id*.]. Officer McCullough-Walker contends Defendant is a flight risk due to his travel without permission and that he appears to have engaged in the same type of illegal activity as that with which he is charged in this case [*Id*.].

On September 11, 2024, Defendant and his counsel appeared before the undersigned on the Petition [Doc. 72, Minutes]. AUSA Sullivan moved for revocation of the conditions of release and detention under 18 U.S.C. § 3148 [*Id*.]. AUSA Sullivan also alleged additional grounds for revocation. The Court set a revocation hearing for September 25, 2024 [*id*.], and instructed the Government to file a motion with any additional allegations and to provide any discovery relating to the revocation issues to defense counsel in advance of the revocation hearing.

3

On September 17, 2024, the Government filed a Petition to revoke Defendant's pretrial release [Doc. 83]. The Government realleges the grounds in the original Petition and states that Defendant "on or about July 22, 2024, at the DeLand Municipal Airport, DeLand, Florida, defendant removed a United States Customs seal affixed to aircraft N5056T, seized by the federal government, in violation of Title 18 United States Code sections 549 and 2233, felonies under federal law" [*Id*. at 1]. According to the Government's Petition, in July 2024, Defendant advertised an airplane N5056T for sale on Facebook Marketplace for $52,000 [*Id*. at 4]. On July 22, 2024, the Department of Homeland Securities Investigations ("HSI") administratively seized airplane N5056T because the registration was obtained by making a false and fraudulent statement and the airplane was operating without proper registration [*Id*.]. HSI placed a locked chain around the airplane's propellor and a red sticker over the seam between the door and body of the airplane stating that the airplane was seized [*Id*.]. The sticker states that the property is under seizure and/or detention by United States Customs and Border Protection and that it is a crime to remove, break, injure or deface "this seal" or to tamper with or remove the property [*Id*. at 5]. A photograph of the sticker is included in the Government's Petition [*Id.*].

The Government further alleges that on July 23, 2024, the administrator of the DeLand Municipal Airport, where airplane N5056T was located, contacted law enforcement and provided photographs from a security video showing an individual resembling Defendant opening the door of airplane N5056T and putting an item into the door pocket [*Id*. at 5–6]. According to the Government, law enforcement reviewed the security video, which shows a male walking to the airplane, peeling back the sticker, opening the door, placing paperwork in the door pocket, closing the door, and putting the sticker back over the seam [*Id*. at 7]. Law enforcement photographed the sticker, which was split and wrinkled, and photographed a Dealer Aircraft Registration Certificate,

4

which was not previously located in the door pocket [*Id*. at 7–8]. Based upon this information, the Government contends that there is probable cause to believe Defendant violated 18 U.S.C. § 549 by breaking the seal on airplane N5056T and violated 18 U.S.C. § 2233 by placing documents inside airplane N5056T after it was seized [*Id*. at 8]. It asserts that probable cause exists to believe Defendant committed state and federal felonies, and, thus, a rebuttable presumption exists that no conditions or combination of conditions will assure that Defendant will not flee or pose a danger to the community or that Defendant will abide by any conditions of release imposed [*Id*. at 9].

Defendant responded in opposition to revocation of his conditions of release [Doc. 87]. He contends that he has fully complied with his conditions of release, maintained communication with his probation officer, and never attempted to flee but, instead, has appeared in court as required [*Id*. at 1–2]. Regarding the allegations of tampering with a Customs seal, Defendant contends the evidence provided by the Government is circumstantial and does not show that he tampered with the airplane or entered it "for illicit purposes" [*Id*. at 2]. With respect to the Florida state charges, he asserts that most of the conduct alleged occurred before his arrest in this case and, thus, should not be considered to revoke his release [*Id*. at 2–3]. He further maintains that "there is no evidence that [he] personally engaged in fraudulent activity" with respect to those allegations [*Id*. at 3]. Finally, Defendant asserts that he notified his supervising officer USPO Charles Sweat of his travel plans, including his flights to Chicago and Michigan, and Officer Sweat did not object to his travel [*Id*. at 3]. In support, Defendant attaches a screen shot of texts with Officer Sweat regarding his flight to Chicago [Doc. 87-1]; a receipt for an Uber trip from Chicago to a location fifty-seven miles away on August 6, 2024 [Doc. 87-2]; and booking information from Jetmembership.com for a round-trip flight from Kenosha, Wisconsin, to Ontonagon, Michigan, on August 6, 2024 [Doc. 87-3].

At the revocation hearing, AUSA Sullivan introduced five exhibits. Exhibit 1 is the Petition for Action on Conditions of Pretrial Release, submitted by Officer McCullough-Walker and filed on August 9, 2024. Exhibit 2 is a screenshot of a Facebook post by Alex Ross advertising a 1979 Citabria Ballanca 7eca airplane for sale for $52,000. In the photograph appearing on the post, the airplane bears the number N5056T on its side [Exh. 2].

The Government also introduced a collective exhibit of ten photographs and a video clip related to the seizure and subsequent interference with airplane N5056T at the DeLand Municipal Airport [Exh. 3]. The first photograph depicts the inside door pocket of airplane N5056T before it was sealed [Exh. 3a]. The second photograph shows a red U.S. Customs warning sticker over the seam between the airplane door and body [Exh. 3b]. In the third photograph, a tall white male with dark hair wearing a white t-shirt and jeans is walking toward airplane N5056T [Exh. 3c]. The fourth photograph shows the male by the side of airplane N5056T with his hand on the closed door [Exh. 3d]. In the fifth photograph, the male is leaning inside airplane N5056T with the door open [Exh. 3e]. The sixth photograph depicts the male reaching inside airplane N5056T and toward the door pocket [Exh. 3f]. The seventh photograph shows the wrinkled, red U.S. Customs warning sticker over the door seam following the male's entry into airplane N5056T [Exh. 3g]. The eighth photograph is a closeup of the red U.S. Customs warning sticker, which shows that it has been cut or torn and reapplied [Exh. 3h]. The ninth photograph, taken after the entry into the airplane, shows the open door and door pocket of airplane N5056T with a paper sticking out of a clipboard [Exh. 3i]. The tenth photograph is a closeup of the door pocket after entry showing a Dealer's Aircraft Registration Certificate for airplane N5056T that did not appear in the first photograph Exhibit 3a [Exh. 3j]. The forty-four-second surveillance video clip shows a white male with a beard walk to airplane N5056T, peel back the portion of the U.S. Customs sticker covering the

6

door, open the door, place a paper in the door pocket, close the door, reapply the sticker over the door, and walk away [Exh. 3k].

AUSA Sullivan also introduced a collective exhibit of thirteen items related to Defendant's travel on August 5–6, 2024 [Exh. 4]. Exhibit 4a is a screen shot of texts between Defendant and Officer Sweat. At 7:39 p.m., on Monday, August 5, Defendant texted Officer Sweat a screen shot of his Delta airline ticket information and a message that he "[h]ad to drive to Atlanta to catch a flight due to hurricane" [Exh. 4a]. Officer Sweat responded, "Ty. Please send me return when booked" [Exh. 4a]. Exhibit 4b is a Google map showing that Defendant drove six hours and thirty-five minutes from his residence in Florida to the airport in Atlanta. Exhibit 4c is a flight schedule from FlightAware for Delta flight 1139 from Atlanta to Chicago between September 9 through 23, 2024. Exhibit 4d depicts a screenshot from the website of the Royal Sonesta Chicago River North hotel, located at 505 North State Street, Chicago, Illinois. Exhibits 4e and 4f are Defendant's Uber receipt from August 6, 2024, for travel between 505 North State Street, Chicago, Illinois, to a drop off location fifty-seven miles away. Exhibit 4g is a quote from Jetmembership.com for a roundtrip flight for three passengers, including Defendant Ross, from Kenosha, Wisconsin, to Ontonagon, Michigan, and back on August 6, 2024. Exhibits 4h, 4i, and 4j are screenshots from Jetmembership.com, stating "your private jet awaits," advertising "private jet charters," and permitting booking through a mobile application. Exhibit 4k is a Google map showing that Ontonagon, Michigan, is over 400 miles by car from Chicago. Exhibit 4l is a U.S. Department of Commerce chart showing that Ontonagon, Michigan, is 117 miles from Thunder Bay, Ontario, in Canada. Exhibit 4m is a map showing the distance from Defendant's address in Florida to Ontonagon, Michigan.

The Government next introduced a forty-five-second clip of an audio recording of a jail telephone call between Defendant and his mother on September 17, 2024 [Exh. 5]. In this call, Defendant states his supervising officer "never supervised him that much" [*Id*.]. Defendant said when he traveled to Pittsburg, he would be one hundred miles away from that location, and it was never an issue [*Id*.]. Defendant claimed that he "over-communicated" with his supervising officer, and his officer failed to respond half of the time [*Id*.].

Mr. Bowlin introduced the affidavit of Detective Daniel Mintz submitted in support of an arrest warrant from Osceola County, Florida [Exh. 6]. The affidavit states that on November 16, 2023, Defendant and an individual from Canada signed a contract for the individual to buy a Cessna 421 airplane N467DM from Defendant for $245,000 [*Id*. at 2]. The contract provided for paint, engine overhauls, propellers, and upgraded avionics to be completed by February 1, 2024 [*Id*.]. The buyer wired money totaling $240,100 to Defendant on November 20, 2024; January 12, 2024; February 1, 2024; and February 6, 2024 [*Id*.]. On February 19, 2024, the buyer and his father arrived at the airport in Titusville, Florida, to view the airplane and found it "in an obvious state of disrepair" and incapable of flight [*Id*. at 3]. On March 8, 2024, Defendant texted the buyer regarding refunding his money, stating his associate was attempting to get the project back on track, that Defendant would forward the buyer the invoices, and that he was getting his assets together to get the buyer's money back [*Id*. at 3]. On March 27, 2024, the buyer received an email with attached invoices for the purchase of parts for the airplane, but further investigation revealed these invoices were fraudulent or the businesses did not exist [*Id*. at 3–4]. The affiant concluded that probable cause exists to arrest Defendant for a scheme to defraud over $50,000 and grand theft over $100,000 [*Id*. at 5]. Included in Exhibit 6 is an unsigned arrest warrant, a memorandum with

"eWarrant" on the signature line, and an attached notation to "hold in office" and not to assign the warrant to a fugitive deputy [*Id*. at 6–8].

Mr. Bowlin proffered that N5056T LLC purchased the N5056T Bellanca Citabira 7ECA airplane from Defendant's company Gator Flights and that Peter Lankester from Sunrise Aero, Inc., purchased airplane N5056T from N5056T LLC.[2] Mr. Bowlin also introduced paperwork for a claim by Peter Lankester to U.S. Customs and Border Protection, petitioning the agency regarding the seizure of airplane N5056T [Exh. 7 pp. 1–5]. This paperwork includes two bills of sale for N5056T and the Dealer's Aircraft Registration Certificate for airplane N5056T dated February 15, 2024, issued to Sunrise Aero, Inc., in Ocala, Florida [*Id*. at 6–8]. The Registration Certificate [*id*. at 8] appears to be the same certificate depicted in the photograph of the door pocket in airplane N5056T after entry on July 22, 2024 [Exh. 3j].

The Government argued pursuant to § 3148, probable cause exists to believe Defendant committed state and federal felonies and the petition and exhibits provide clear and convincing evidence that Defendant has violated his conditions of release. AUSA Sullivan stated that Detective Mintz's affidavit shows that Defendant committed fraud and theft in the sale of a Cessna 421 airplane N467DM to a Canadian buyer. Two wire transfers from the buyer to Defendant's U.S. bank account and the provision of false invoices occurred after Defendant's arrest in this case on January 18, 2024. AUSA Sullivan argued that law enforcement had an arrest warrant for fraud and theft, which provides probable cause that Defendant committed felonies in Florida.[3] She

---

[2] The bills of sale for these transactions show that Defendant is the CEO of Gator Flight LLC, and the manager of N5056T LLC, which is located at his home address [Exh. 7 pp. 6–7]. The sale of airplane N5056T by Gator Flight LLC to N5056T LLC occurred on October 10, 2023 [*Id*. at 6]. The sale of airplane N5056T by N5056T LLC to Sunrise Aero Inc. occurred on June 5, 2024 [*Id*. at 7].

[3] Although the arrest warrant is unsigned, AUSA Sullivan stated that in Florida, a judge must sign the arrest warrant for a case number to be issued. Here, the affidavit and arrest warrant have

9

asserted that due to these state crimes, a rebuttable presumption arises that no conditions exist to prevent Defendant from endangering the community by committing more crimes.

AUSA Sullivan argued collective exhibit 3 shows Defendant committed a second felony by removing and ripping the Customs sticker on airplane N5056T, placing a paper inside, and replacing the sticker. She asserted that the Customs warning sticker clearly warns that the removal of the sticker is a crime. She maintained that Defendant's conduct shows that he will do whatever he wants to do with no regard for his conditions of release.

Finally, AUSA Sullivan argued that collective exhibit 4 provides clear and convincing evidence that Defendant violated his travel restrictions by traveling to Atlanta, Chicago, Wisconsin, and Michigan, without permission from his supervising probation officer. She stated that Defendant was also a passenger in a private airplane in violation of his conditions. AUSA Sullivan asserted that Defendant notified Officer Sweat that he was in Atlanta and flying to Chicago, rather than seeking permission beforehand. Moreover, she emphasized that Defendant took a private airplane to Ontonagon, Michigan, which is 400 miles from Chicago, and only 117 miles from Canada. She said Officer Sweat only learned Defendant's location in the flight to Ontonagon by watching his "GPS data pings" and researching flights in that area. AUSA Sullivan stated that Defendant's jail call to his mother reveals that he violated his travel restrictions before by traveling 100 miles away when he was supposed to be in Pittsburg.

AUSA Sullivan proffered that Defendant is in the process of selling his home in Florida, which indicates his intent to flee. She also said Defendant recently married and gave power of attorney to his wife so that she could sell his house. And according to AUSA Sullivan, Defendant's

---

a case number [Exh. 6]. Moreover, AUSA Sullivan said according to Officer McCullough-Walker's Petition, the pending Florida charges were in NCIC.

wife also continues to sell airplanes on his behalf while he is incarcerated, and she has received complaints from his customers.

Mr. Bowlin argued that Defendant is not a flight risk. He noted that Defendant did not remove his GPS ankle monitor and complied with Officer Sweat's instructions. He stated that Defendant's text messages with Officer Sweat show that he had permission to travel. Mr. Bowlin said Defendant booked a round trip ticket to Ontonagon for business and intended to text Officer Sweat his return flight from Chicago when he returned later that day, but his plan was derailed when he was arrested in Michigan.[4] Mr. Bowlin explained that Defendant's chartered flight to Ontonagon was not on a private aircraft, and if Defendant had been fleeing, he would have removed his GPS monitor. Mr. Bowlin stated that Defendant traveled three to four times per month and that Defendant complied with Officer Sweat's expectations. He related that Officer Sweat had previously stated that he did not need Defendant to be on GPS monitoring and was "relaxed" in the way he monitored Defendant.

Mr. Bowlin argued that the affidavit of Detective Mintz shows that Defendant took no actions regarding the alleged criminal activity following his arrest in this case on January 18, 2024. He said these preexisting allegations cannot be considered violations of conditions that did not yet exist. Additionally, Mr. Bowlin stated that the arrest warrant for the Florida charges is not signed by a judge and, thus, a judge did not find probable cause that Defendant committed the alleged crimes.

As to the allegations relating to the N5056T airplane at the DeLand Municipal Airport, Mr. Bowlin argued that it was not illegal for Defendant to offer an airplane for sale on Facebook.

---

[4] Mr. Bowlin stated that it is his understanding that Defendant had some prior communications with Officer Sweat regarding this trip before his text to Officer Sweat on August 5. He said Defendant was meeting with business partners in Ontonagon, Michigan. Because of inclement weather from a hurricane, Defendant could not fly from Florida to Atlanta.

He questioned whether the registration paper was placed in the airplane after it was sealed because Exhibit 3(b) shows a yellow rag and paperwork through the window on the other side of the airplane. Mr. Bowlin also argued that the Government has failed to show that airplane N5056T was improperly registered. Instead, exhibit 7 shows that airplane N5056T was owned by Pete Lankester and properly registered to his company Sunrise Aero. He asserted that the Government has failed to provide probable cause that Defendant entered airplane N5056T, but even if he did, there is no evidence he damaged anything or tampered with the airplane.

Mr. Bowlin stated that the Court can impose additional conditions that would protect the community and assure Defendant's presence at trial. He argued that the Court could impose house arrest, continue GPS monitoring, and prohibit Defendant from engaging in the sale of airplanes. He maintained that Defendant's release was vital to trial preparations so Defendant can access necessary materials in his office in Florida.

AUSA Sullivan responded that the ownership of airplane N5056T is irrelevant to whether Defendant tampered with the Customs warning sticker in violation of § 549. She argued that even if Defendant placed nothing in the airplane, the sticker was clearly removed to open the door and was ripped. AUSA Sullivan maintained that house arrest and prohibiting any aviation business will not assure Defendant's presence, nor protect the community. She argued that Defendant is a danger because he sells airplanes that are not airworthy, and he continues to do so through his wife, even though he is presently incarcerated. She proffered that "Defendant has crashed four airplanes" and jail calls reveal that Defendant's wife has received complaints about airplanes sold by Defendant not being as advertised.[5] AUSA Sullivan asserted that Defendant's actions on

---

[5] Mr. Bowlin denied that Defendant had crashed four airplanes since January 18, 2024.

pretrial release, including taking liberties with travel and committing other crimes, show that he has no respect for the conditions imposed by the Court.

## II. ANALYSIS

"A person who has been released under [18 U.S.C. §] 3142 . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). After a hearing, the Court shall revoke the defendant's release and detain the defendant, if it finds probable cause to believe the defendant has committed another crime while on release or clear or convincing evidence that the defendant has violated any other condition of release and the Court also finds "there is no condition or combination of conditions of release that will assure the person will not flee or pose a danger to the safety of any other person or the community" or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

If the Court finds probable cause to believe that the defendant has committed a federal, state, or local felony while on release, this finding gives rise to a rebuttable presumption that no condition or combination of conditions "will assure" that the defendant is not a danger to another person or the community. *Id*. If the Court "finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions," then the Court may amend the conditions of release pursuant to the provisions of § 3142. *Id*.

Here, the Court finds probable cause to believe that Defendant Ross has committed a federal felony by removing, breaking, and defacing the customs seal on an airplane at the DeLand Municipal Airport. 18 U.S.C. § 3148(b)(1)(A). Under § 549, "[w]hoever, without authority, willfully removes, breaks, injures, or defaces any customs seal or other fastening or mark placed

13

upon any vessel, vehicle, warehouse, or package containing merchandise or baggage in bond or customs custody or control . . . [s]hall be fined under this title or imprisoned not more than 10 years or both." 18 U.S.C. § 549. Security video footage shows that on July 22, 2024, Defendant Ross peeled back the customs seal on airplane N5056T, opened the door to the airplane, seemingly placed an item inside, closed the door, and reapplied the sticker [*See* Exh. 3k]. The person in the security video appears to be Defendant, based upon his height, build, facial hair and hairstyle,[6] and the fact that he is wearing pants.[7] The inference that the individual in the video placed the Dealer's Aircraft Registration Certificate for airplane N5056T in the door pocket [*see* Exhs. 3a & 3j] also supports a finding that the individual in the security video is Defendant because his company N5056T LLC sold the airplane to Sunrise Aero about six weeks earlier [Exh. 7 pp. 6–7].

A closeup photograph of the customs seal after entry into airplane N5056T shows that the sticker has been torn and wrinkled, in other words "broken" and "defaced" [*Compare* Exh. 3g *with* Exh. 3b]. The fact that Defendant broke the seal to enter the airplane despite the sticker's clear warning that to do so was a crime shows that he acted willfully. Defendant argues that he did nothing illicit, nor did he damage the airplane, but such is not required to violate § 549. Accordingly, the Court finds probable cause to believe Defendant committed a federal felony and

---

[6]     Defendant has appeared before the undersigned multiple times [*See* Docs. 14, 40, 72 & 88].

[7]     On April 17, 2024, Defendant moved for a modification of his conditions of release to remove the requirement of GPS monitoring because he could not wear shorts in the Florida heat without his ankle monitor being visible to his business associates [Doc. 35 p. 2; *see also* Doc. 41]. The undersigned denied this request [*Id.*].

the rebuttable presumption that no condition or combination of conditions will assure that Defendant is not a danger applies.[8] 18 U.S.C. § 3148(b).

The Court has considered the modified conditions offered by Defendant that he remain on GPS monitoring but be restricted to his residence on home incarceration and that he not conduct any business in the aviation field. But the Government has proffered that Defendant has continued to sell airplanes while incarcerated through his wife, evincing the ability to continue in the aviation business indirectly. Moreover, the evidence presented at the revocation hearing shows Defendant repeatedly traveled outside of the Middle District of Florida to locations unknown to and not expressly approved by his supervising officer, all while wearing a GPS monitoring device. Finally, the evidence shows that Defendant continued to engage in criminal activity related to the aviation field—avoiding detection and receiving payments for the fraudulent sale of a non-airworthy airplane to a Canadian buyer and breaking the customs seal on airplane N5056T—in blatant disregard for the most basic condition of release that he not commit other crimes. For these reasons, the Court has no confidence that Defendant would abide by any conditions the Court may set, including that he remain on home incarceration and not do business in the aviation field. *See* 18 U.S.C. § 3148(b)(2)(B).

### III. CONCLUSION

For the reasons stated herein, and pursuant to 18 U.S.C. § 3148, the Government's Petition for revocation of pretrial release [**Doc. 83**] is **GRANTED** and Defendant's pretrial release is **REVOKED**. Defendant Ross is **ORDERED** remanded to the custody of the United States Marshal to await his trial. Defendant is committed to the custody of the Attorney General or his

---

[8] Because of this finding, the Court need not consider whether there is probable cause to believe Defendant violated Florida state law nor whether there is clear and convincing evidence to believe Defendant violated a condition of his release.

designated representative for confinement in a correction facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

    **IT IS SO ORDERED**.

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge