UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:23-CR-128-TAV-JEM ) |
| ALEXANDER GLENN ROSS, | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge Jill E. McCook (the "R&R") [Doc. 185]. The R&R addresses the government's motion to amend the order of forfeiture for money judgment to include specific substitute assets [Doc. 126], the government's motion for entry of amended order of forfeiture for money judgment [Doc. 155], and defendant's objection to the amount of money judgment [Doc. 127]. Defendant has filed a notice of objections to the R&R [Doc. 186], and the government replied [Doc. 193]. This matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons below, defendant's objections [Doc. 186] are **OVERRULED**, and the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 185] in whole. The government's motion to amend the order of forfeiture for money judgment to include specific substitute assets [Doc. 126] and motion for entry of amended order of forfeiture for money judgment [Doc. 155] will be **GRANTED**, and defendant's objection to the amount of money judgment [Doc. 127] will be **DENIED**.

## I. Background

The Court presumes familiarity with the background and summary of the evidence set forth in the R&R [*See* Doc. 185, pp. 2–20]. As neither party has objected to this portion of the R&R, the Court reincorporates it in relevant part below:

> On December 20, 2023, the Grand Jury returned an Indictment charging Defendant Ross and Codefendant James T. Markey with conspiring to falsify material facts concerning aircraft parts from at least April 15, 2022, through at least February 27, 2023 (Count One) [Doc. 3 ¶ 10]. The Indictment alleges overt acts relating to Defendant Ross's sale of aircraft N6522Q to R.P. following false logbook entries by Codefendant Markey [*Id.* ¶¶ 14–21]. The Indictment also charges Defendant Ross with fraud involving aircraft parts from April 15, 2022, through at least June 21, 2022 (Count Two), wire fraud on May 6, 2022 (Count Three), and money laundering on June 21, 2022 (Count Four) [*Id.* ¶¶ 22–26]. The Indictment contains forfeiture allegations, including that Defendant Ross shall forfeit any property constituting or derived from proceeds that he obtained directly or indirectly from the wire fraud [*Id.* ¶ 28].
>
> The only aircraft expressly mentioned in the Indictment is N6522Q [*Id.* ¶¶ 14–22 & 24]. On March 21, 2024, the Government filed a Bill of Particulars for Forfeiture of Property notifying Defendant that it is seeking forfeiture of three additional aircraft: N8787D, N6210H, and N68515 [Doc. 27 p. 1]. Both Defendants gave statements to law enforcement, each implicating the other in the alleged offenses.
>
> On October 21, 2024, Defendant Ross entered a guilty plea to a single count of wire fraud (Count 3) [Doc. 120, Minutes; see also Doc. 118, Plea Agreement]. Defendant stipulated to facts relating to the sale of aircraft N6522Q but expressly agreed that the facts submitted for purposes of his guilty plea "do not necessarily constitute all the facts in the case[ and o]ther facts may be relevant to sentencing" [*Id.* ¶ 4]. As part of his plea agreement, Defendant agreed to forfeit to the Government "immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or defendant's nominees that constitute or are traceable to the proceeds of violations of [wire fraud, ]18 U.S.C. § 1343" [*Id.* ¶ 9]. The plea agreement states as a part of the forfeiture required, "Defendant agrees to a personal money judgment against the defendant and in favor of the United States which represents the proceeds the defendant personally obtained as a result of an offense in violation of 18 U.S.C. § 1343" [*Id.*]. The parties did not agree to a specific amount for the money judgment in the plea agreement [*Id.*].
>
> On November 26, 2024, District Judge Varlan entered an Order on Forfeiture for Money Judgment providing that in his Plea Agreement, "Defendant agreed to a personal money judgment, representing the proceeds the Defendant personally

2

obtained as a result of the offense in violation of 18 U.S.C. § 1343" [Doc. 122 p. 1]. It further states the amount of the money judgment is $100,000, which "represent[s] the proceeds the Defendant personally obtained as a result of the Defendant's violations of 18 U.S.C. § 1343" [*Id.* at 2].

On December 5, 2024, the Government moved to amend the Order of Forfeiture to include Defendant's residence in Saint Cloud, Florida, as a substitute asset [Doc. 126 pp. 1–2]. Defendant objected to the "calculation of the $100,000 money judgment" arguing the forfeiture amount is limited to his "actual financial gain" [Doc. 127 pp. 1–2]. He also questioned whether the Government demonstrated that he lacks sufficient proceeds to cover the money judgment without reaching substitute assets or that the listed substitute assets are appropriate [*Id.* at 3–4]. Defendant requested an "evidentiary hearing to allow [him] to challenge the government's calculation and its justification for including substitute assets" [*Id.* at 7].

The Government responded that a wire fraud conviction subjects Defendant to forfeiture of the proceeds of the entire scheme to defraud, not just the aircraft named in the Indictment [Doc. 130 p. 6 (citing *United States v. Venturella*, 585 F.3d 1013, 1015–17 (7th Cir. 2009)); *see also* Doc. 136 p. 3]. It asserted that the $100,000 money judgment is approximately one-tenth of Defendant's gain in "nearly a million-dollar fraud scheme" [Doc. 130 p. 7] and it requested the opportunity to argue for a greater amount at the evidentiary hearing [*Id.* at 9; Doc. 136 pp. 2–3].

A. March 7, 2025 Evidentiary Hearing

On March 7, 2025, [Judge McCook] held an evidentiary hearing to determine the amount of the money judgment, whether Defendant has sufficient assets to fulfill the money judgment. As noted above, the Government also moved for the Court to include a "1979 Bellanca Citabria 7ECA[ aircraft] (N5056T), seized on July 22, 2024, at the DeLand Municipal Airport" as a substitute asset [Doc. 126 p. 2]. At the evidentiary hearing on August 25, 2025, the parties agreed this aircraft is already subject to civil forfeiture. Thus, [Judge McCook] does not include it in the analysis.

The Government presented the testimony of Special Agent Matthew DeVane of the Department of Transportation, Office of Inspector General. Agent DeVane testified regarding his investigation of twelve aircraft Defendant sold with false information regarding the annual inspections necessary to maintain flight status. Agent DeVane stated that to maintain flight status, an airplane must have a yearly inspection by an "airframe and powerplant mechanic," an "A&P," who has inspection authorization, "IA." He stated an A&P's IA cannot be delegated to a "lesser mechanic." Agent DeVane said once the A&P performs the annual inspection, he certifies the work he performed in the airplane's logbook. Agent DeVane testified that Defendant engaged in a scheme with Codefendant James Markey, who is an A&P. According to Agent DeVane, Defendant would buy aircraft with maintenance issues, perform

3

minimal maintenance on the aircraft, and then sell the aircraft to a buyer he found online. He stated that as a part of this scheme, Markey would certify that he completed an annual inspection on the aircraft but would either perform no maintenance on the aircraft or would not do the maintenance that he stated he did. Agent DeVane said Defendant would represent to a potential buyer that the annual inspection on the aircraft was up to date, a fact that increased the value of the aircraft. He said Defendant would sell the aircraft to the buyer and receive a check from the buyer by wire transfer.

Agent DeVane testified that Defendant engaged in this scheme for additional aircraft beyond the one specified in the Indictment. With the use of a summary chart [Exh. 4], Agent DeVane testified about the proceeds Defendant received for the twelve aircraft and the corresponding wire transfers of those proceeds along with any amount returned to the purchaser. He also testified regarding evidence from Defendant's bank accounts [Exhs. 2 & 3]. Agent DeVane testified that Defendant's gain from the sale of these aircraft was $564,640, and subtracting out amounts refunded to buyers ($103,200) and $65,000 for which he lacked the corresponding documentation, Defendant's total gain was $396,440. He also testified that during his investigation, he had not located significant assets for Defendant other than two substitute assets: Defendant's home in St. Cloud, Florida, and aircraft N5056T, which belonged to Defendant's business Gator Flights.

On cross-examination, Agent DeVane testified that he gathered information on which aircraft to include in his chart from an unrecorded interview of Codefendant Markey. He said he made notes during his interview of Markey and of the buyers and mechanics and then submitted summaries ("Memoranda of Activity" or "MOAs") to the Government. Agent DeVane said mechanics who conduct annual inspections of aircraft maintain their own records of inspections, and Markey provided copies of his documentation of logbook entries for the aircraft he identified as not properly inspected. Agent DeVane stated that information regarding aircraft numbers 8 and 12 on his chart were not provided by Markey.

When asked how Defendant knew that Markey did not perform a valid annual inspection on the airplanes listed in the chart, Agent DeVane testified that Defendant entered a guilty plea to wire fraud admitting he knew Markey did not perform a valid annual inspection on the airplane sold to Richard Price, who is victim 3 on the chart. He stated the transaction with victim 1 and the transaction with Mr. Price were about three weeks apart. He said all the transactions on the chart are "generally contemporaneous." Agent DeVane stated that Markey identified the planes on the list (except for entries 8 and 12) as ones in which he performed an invalid annual inspection because he certified work that Defendant performed or work that was not done. Agent DeVane said Defendant paid Markey $1,000 per local annual inspection and $1,200 when Markey had to travel for the annual inspection.

4

Agent DeVane identified two aircraft from Markey's list where Defendant was present when Markey performed the incorrect annual inspection: N2374H, which is the airplane Defendant sold to Steve Blackwell, and N6522Q, which is the airplane Defendant sold to Richard Price. Agent DeVane said regarding the aircraft Defendant sold to Steve Blackwell (Victim 2), Markey said Defendant removed an engine from aircraft CF-DIG and had Markey install it in N2473H, then Markey entered incorrect information from Defendant into the logbook for N2473H. Agent DeVane said Defendant had knowledge of this incorrect logbook entry because Defendant told Markey what to write. Agent DeVane testified that similarly, for aircraft N6522Q, the aircraft sold to Richard Price, Markey said he came to the airport in Virginia to perform the annual inspection and inspected an emergency locator transmitter (an "ELT") lying on a table, but did not reinstall it. Agent DeVane testified that Markey told him that he certified that he reinstalled the emergency locator transmitter, but he did not, and that Defendant was physically present during that inspection.

Agent DeVane testified that victim number 8, David Caicedo, who himself is an A&P, told him that Markey performed the annual inspection on the airplane he purchased from Defendant, but this airplane is not one that Markey included on his list. According to Agent DeVane, Mr. Caicedo opined that the annual inspection was "pencil whipped" because if the aircraft had received a proper annual inspection, it would have not had the issues he had with it. Agent DeVane said that whether Markey performed an incorrect annual on Mr. Caicedo's airplane is marked "unknown" on his chart because this aircraft was not included on the list provided by Markey. Agent DeVann said Markey told him that he lost some of his data on inspections when he changed computers. Agent DeVane stated that Markey also did not include the transaction in line 12 of his chart relating to the sale of an aircraft to Daniel Roche on his list of invalid annual inspections. Agent DeVane said instead, Defendant signed Markey's name as having done this annual inspection, and Markey was upset about it. Following a brief recess during cross-examination, the parties asked the Court to adjourn the hearing and hold the forfeiture issues in abeyance to permit time for them to meet and confer on an agreement that the Court would impose restitution in lieu of forfeiture [*See* Doc. 141 p. 1]. The parties agreed to file a joint status report on the details of their agreement [*Id.*]. [Judge McCook] granted the adjournment and permitted the parties to meet and confer on an agreement regarding forfeiture, instructed Agent DeVane that his testimony could be reopened, and ordered a status report in one week [*Id.* at 1–2].

B. Post-hearing Developments

On March 18, 2025, and instead of a status report, the parties presented the District Judge with an agreed order to restrain Defendant from dissipating assets [*See* Doc. 144]. District Judge Varlan entered the Agreed Order preventing Defendant from dissipating or encumbering assets, specifically his residence in Saint Cloud, Florida, without the prior approval of the Court [Doc. 145 p. 4]. On the same day,

5

Case 3:23-cr-00128-TAV-JEM  Document 197  Filed 10/31/25  Page 5 of 18
PageID #: 1453

Judge Varlan entered a renewed referral Order for the Government's Motion to Amend the Order of Forfeiture for Money Judgment to Include Specific Assets [Doc. 146].

Following the second referral, [Judge McCook] sought briefing on Defendant's response to the Government's position that the amount of the money judgment is the proceeds from the entire scheme to defraud and his position on the appropriate method of calculating the money judgment [Doc. 147 p. 3]. Defendant filed a supplemental brief arguing that he did not have the source material that Markey provided to Agent DeVane and upon which Agent DeVane relied to construct his summary chart and objected to a requirement that he "articulate itemized objections to transactions that are not in the record and have not been disclosed" [Doc. 148 pp. 1–2]. Defendant asserted that any forfeiture must be limited to proceeds he personally obtained [*Id.* at 4, 6]. Specifically, he maintained "the fact that [he] may have engaged in commercial transactions during the timeframe of the offense does not make those proceeds forfeitable unless the [G]overnment proves . . . [t]hat the transaction was part of the charged fraudulent scheme; and . . . [t]hat [Defendant] personally retained the proceeds of that transaction" [*Id.* at 5].

The Government responded that it provided Agent DeVane's summary chart and the banking records to defense counsel prior to the March 7 hearing, and that Agent DeVane's testimony establishes the amount of Defendant's gain from the entire scheme to defraud is $396,440 [Doc. 150 pp. 4–5, 8–10].

On June 5, 2025, Defendant moved to exclude evidence or compel disclosure of "all documentation, notes, memoranda, summaries, digital media, and communications related to" Agent DeVane's October 2024 interview of Codefendant Markey ("second Markey interview") [Doc. 152 pp. 1, 3]. The undersigned denied this request concluding the discovery procedures in Federal Rule of Criminal Procedure 16 do not apply at this stage in the proceedings, the Court has no information that the information or documents provided by Codefendant Markey were exculpatory, and Defendant may challenge Agent DeVane's testimony on cross-examination [Doc. 160 pp. 10–12].

On June 16, 2025, District Judge Varlan entered a Preliminary Order of Forfeiture for four aircraft previously seized by the Department of Homeland Security including a 1979 Bellanca Citabria 7ECA (N5056T), seized on July 22, 2024, at the DeLand Municipal Airport, in DeLand, Florida [Doc. 161 pp. 2–3].

C. June 17, 2025 Evidentiary Hearing

The parties appeared on June 17, 2025, for a continuation of the evidentiary hearing. Defense counsel resumed his cross-examination of Agent DeVane, who stated that the second column of his chart [Exh. 4] indicates whether Codefendant Markey told him that Markey "falsely certified" a logbook entry on an aircraft on which Defendant Ross performed some maintenance "work that was not properly

6

supervised" [Doc. 179, Transcript, pp. 7–8]. Agent DeVane stated that two aircraft are marked "UNK" for "unknown" in this second column 3 Three of these four aircraft are the subject of the Bill of Particulars filed on March 21, 2024 [Doc. 27]. The fourth (N5056T) was discussed at Defendant's September 25, 2024 revocation hearing [Docs. 88 & 94 p. 4]. In his plea agreement, Defendant agrees to assist with and not oppose the forfeiture of the aircraft seized by the Department of Homeland Security Investigations [Doc. 118 ¶ 9]. Again, at the August 25, 2025 evidentiary hearing, Defendant, through counsel, admitted that he has agreed to forfeit N5056T, and the Government stated that this aircraft is not part of the judicial forfeiture. [*Id.* at 8]. He agreed that the second column reflects the aircraft that Markey said he performed an incorrect annual inspection for Defendant [*Id.*]. Agent DeVane said within two weeks of his second interview of Markey, defense counsel for Markey emailed documentation for the incorrect annual inspections for all the listed aircraft except for the two aircraft marked "unknown" in the second column [*Id.* at 9–10]. Agent DeVane said that the logbooks in which the annual inspections are recorded stay with the aircraft, but mechanics keep records to document their work [*Id.* at 15]. He said the information emailed from Markey's attorney was copies of Markey's records on the annual inspections on these aircraft [*Id.*].

According to Agent DeVane he interviewed ten of the purchasers of the aircraft by telephone; for one aircraft, he interviewed the next owner (not the purchaser from Defendant) both by telephone and in person; and for one aircraft, he did not interview the purchaser because the aircraft crashed in route and was not delivered to the purchaser [*Id.* at 11–12]. Agent DeVane denied that his second interview with Markey was the sole means by which he identified the victims on his chart [*Id.* at 13]. Agent DeVane testified that the date of the annual inspection found in column 5 of his chart came from the documents emailed from Markey except for number 12 [*Id.* at 14]. Regarding victim 12, Agent DeVane said that Defendant signed Markey's name to an annual inspection on February 12, 2023, but Markey did not complete the annual inspection [*Id.*]. He said Markey told him during the first interview that he did not sign this annual inspection [*Id.*]. Regarding victim 8, Agent DeVane testified that the annual inspection bore Markey's name but was not one of the annual inspections that Markey identified in his second interview [*Id.* at 22].

Agent DeVane stated that when he interviewed Mr. Astatkie (victim 1), he reported that the airplane he purchased from Defendant had an issue with the engine, and Mr. Astatkie was going to have to pay to have the engine repaired [*Id.* at 22–23]. Agent DeVane said Mr. Astatkie reported that after he paid Defendant for the airplane, Defendant stopped communicating with him [*Id.*]. Agent DeVane thought Mr. Astatkie still owned the aircraft at the time of the interview [*Id.* at 23]. He said Mr. Astatkie reported paying $60,000 for the aircraft, but Agent DeVane could not find the $5,000 down payment in Defendant's bank records, so he listed $55,000 as the amount for that aircraft on his chart [*Id.* at 24].

7

Agent DeVane testified that the information from Markey was only part of how he determined the twelve individuals were victims [*Id.* at 28]. He said that after identifying the victim listed in the Indictment, agents subpoenaed Defendant's bank records, found people who paid Defendant in a similar way, and contacted them [*Id.* at 29]. Agent DeVane said the purchase amounts on his chart come from wire transfer records and the purchase amounts are supported by sales documentation by "OBI, which is . . . information that the originator provides" and by the information from Markey [*Id.*]. He said at the time the parties were engaged in plea negotiations, law enforcement had identified seven victims [*Id.* at 30]. Agent DeVane stated that he spoke with the following victims prior to receiving the documentation from Markey: Mr. Blackwell, Mr. Price, Mr. Roche, and Mr. Furlong [*Id.*]. Agent DeVane agreed that for each of the listed aircraft, except for victim 12, Defendant knew at the time he sold the aircraft that Markey had performed an incorrect annual inspection on it [*Id.* at 32].

Agent DeVane stated that when an individual performs maintenance on an aircraft, they must document the maintenance and include their certificate number in the aircraft's logbook, which remains with the aircraft [*Id.*]. He said that Defendant told him that when Markey performed a "remote inspection[,]" Markey would create the log book entry from his handwritten notes once he returned to New York and email it to Defendant [*Id.* at 34]. Agent DeVane said he has seen photographs of the logbook entries for Mr. Blackwell (victim 2), Mr. Price (victim 3), Mustang Sally Aviation (victim 7); and Mr. Roche (victim 12) [*Id.*]. He testified that Markey did not recall seeing the aircraft or performing the annual inspection for victim 12, which is the one where Defendant signed his name [*Id.* at 35].

Agent DeVane stated that he notified each of the victims on his chart about the incorrect annual inspections, except for Mr. Deiman (victim 5), whose aircraft crashed before delivery [*Id.* at 36].

Agent DeVane stated that several of the victims had another annual inspection performed on their aircraft after he informed them that the annual inspection by Markey was invalid [*Id.* at 40]. He said that many of the victims had learned before he called them that the aircraft they purchased from Defendant was not airworthy [*Id.*]. He said many had also "noted mechanical issues upon receipt of the aircraft and an inability to get in in contact with [Defendant]" [*Id.*]. Agent DeVane said some of the victims had hired local mechanics to fix the problems with their airplanes before he called them [*Id.*]. After affirming that he was aware of his rights under the Fifth Amendment, Defendant testified that at the time Markey performed the annual inspections, he was not aware that Markey was doing incorrect annuals [*Id.* at 43]. Defendant filed a motion to withdraw his guilty plea on June 20, 2025, [which District Judge Varlan denied [Docs. 174]].

8

D. August 25, 2025 Evidentiary Hearing

The parties again appeared for the continuation of the evidentiary hearing on August 25, 2025. The Government cross-examined Defendant, who read portions of his Plea Agreement [Exh. 5] and identified a Financial Statement [Exh. 6] that he signed on June 17, 2025. Defendant agreed that he listed no assets in response to the question asking him to list assets other than real estate and vehicles, including cash, jewelry, business accounts, vintage cars, airplanes, and monies owed to him by others. The Court heard oral argument and took the matter under advisement.

[*See id.* (footnotes omitted)]. Upon consideration of the record and the parties' arguments, Judge McCook has recommended that the government's motion to amend the order of forfeiture [Doc. 126] and motion for entry of amended order of forfeiture [Doc. 155] be granted, and defendant's objection to the amount of money judgment [Doc. 127] be denied.

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the government's motions, defendant's objections, and the government's response, in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that

9

merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effect[] as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citation omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) (citations omitted) ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

### III. Analysis

Defendant raises four objections to the R&R, specifically: (i) contesting the finding that the amount of the personal money judgment is $396,440.00; (ii) contesting the finding that defendant's residence is an appropriate substitute asset for forfeiture; (iii) arguing that his guilty plea did not stipulate to forfeiture or waive objections; and (iv) arguing that the government violated Federal Rule of Criminal Procedure 16(a)(1)(E) by failing to disclose certain materials prior to the plea and before and during proceedings [Doc. 186, pp. 1–3]. The government responds that the R&R correctly applied the law to each of these issues [Doc. 193].

#### A. Forfeiture Amount

In the R&R, Judge McCook found that the forfeiture amount is $396,440.00, which represents the proceeds derived from defendant's scheme to defraud [Doc. 185, p. 31]. Judge McCook noted that the purchase price of all twelve aircraft on DeVane's chart constitutes proceeds of defendant's wire fraud scheme [*Id.* at 28]. Based on DeVane's chart and testimony, and defendant's testimony, Judge McCook concluded that the

10

government has met its burden to show that the value of the proceeds of defendant's scheme to defraud is $396,440.00 [*Id.* at 28–29].

Defendant objects to the Judge McCook's finding, arguing that the government has not met its burden to prove the forfeiture amount under 21 U.S.C. § 853(a)(1) [Doc. 186, pp. 1–2]. Defendant states that the government's "sole evidence" in support of the forfeiture amount was a summary chart prepared by DeVane, and it did not "call any witnesses to testify as to the chart's methodology or contents," "produce the underlying records upon request," or "establish any individualized nexus between [defendant] and the alleged proceeds" [*Id.*]. Moreover, defendant asserts that the Court erroneously relied on the chart although there is no evidence "linking [defendant] to the aircraft transactions in the chart" [*Id.*]. As such, defendant urges this Court to reject Judge McCook's finding that the proceeds from the scheme total $396,440.00 [*Id.*]. The government responds that the R&R correctly found that the amount of money judgment extends to the proceeds from the entire scheme to defraud [Doc. 193, p. 3].

First, defendant's objection that the summary chart was the sole evidence used by the government is without merit. At the March 7, 2025, hearing, DeVane provided proof of financial transactions, including bank wire transfers from the victims' bank accounts to defendant's bank account. The government also presented evidence that defendant was the sole signatory on his account and the purpose of the wire transfers was to purchase aircraft. Moreover, DeVane testified regarding his conversations with defendant and Markey, which formed the bases for entries on the summary chart.

11

Second, the Court finds that the government disclosed the underlying documents used to prepare the summary chart by attaching them in an email on March 6, 2025 [Doc. 150, p. 4].

Third, the government presented evidence of defendant's bank transfers, linking him to the aircraft transactions in DeVane's chart. Specifically, DeVane testified about the proceeds defendant received for the twelve aircraft and the corresponding wire transfers of those proceeds along with any amount returned to the purchaser.

Fourth, defendant's claim that the government failed to call any witness to testify as to the chart's methodology or contents is unsupported. As noted in the R&R, DeVane testified regarding evidence from defendant's bank accounts, and he stated that defendant's gain from the sale of these aircraft was $564,640.00. He subtracted out amounts refunded to buyers ($103,200.00) and $65,000.00 for which he lacked the corresponding documentation. DeVane concluded that defendant's total gain was $396,440.00.

Accordingly, as Judge McCook established in the R&R, the proceeds from defendant's scheme total $396,440.00 [Doc. 185, p. 27].[1] Defendant's first objection is **OVERRULED.**

---

[1] *See United States v. Venturella*, 85 F.3d 1013, 1017 (7th Cir. 2009) ("The defendants pled guilty to one count of mail fraud that also alleged a fraudulent scheme, and the amount of the mailing, by itself, does not adequately account for the proceeds obtained from their crime of conviction."); *United Staes v. Lo*, 839 F.3d 777, 739 (9th Cir. 2016) (holding that the forfeitable proceeds from a single instance of wire fraud include the gain from the fraudulent scheme as a whole); *United States v. Capoccia*, 503 F.3d 103, 117–18 (2d Cir. 2007) ("Where the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise," the forfeitable proceeds include the proceeds of "that scheme, conspiracy, or enterprise."); *United States v. Cline*, 148 F.4th 1162, 1178 (10th Cir. 2025) ("[T]he proceeds traceable to each wire-fraud violation necessarily included *all* the proceeds the defendant obtained through the alleged scheme.") (emphasis in original)).

## B. Substitute Asset

In the R&R, Judge McCook found that defendant's residence is a suitable substitute asset for forfeiture [Doc 185, pp. 29–31]. Judge McCook noted that defendant no longer has the proceeds from his aircraft sales in 2022 and early 2023, and DeVane could not find the proceeds with due diligence [*Id.* at 30]. Judge McCook found that defendant claims to have no assets other than his residence and a truck valued at $27,000.00 [*Id.*]. Accordingly, Judge McCook concluded that defendant's residence is subject to forfeiture [*Id.*].

Defendant objects to the Judge McCook's finding that his residence is an appropriate substitute asset, arguing that the government failed to satisfy 21 U.S.C. § 853(p) [Doc. 186, p. 2]. Specifically, defendant argues that the government has not shown that the "original proceeds have been transferred, diminished, commingled, or otherwise rendered unavailable" as required by 21 U.S.C. § 853(p) [*Id.*]. Defendant also alleges that there is no "evidence suggesting diligence or tracing efforts" [*Id.*]. The government responds that Judge McCook correctly held that defendant's residence is an appropriate substitute asset as defendant does not have traceable assets to forfeit [Doc. 193, p. 6].

Substitute assets are subject to forfeiture when, "as a result of any act or omission of the defendant," the property derived from or constituting the proceeds of the offense

    (A)  cannot be located upon the exercise of due diligence;
    (B)  has been transferred or sold to, or deposited with, a third party;
    (C)  has been placed beyond the jurisdiction of the court
    (D)  has been substantially diminished in value; or
    (E)  has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1). Section (p)(2) clarifies that "in *any* of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of [the traceable proceeds]." *Id.* § 853(p)(2) (emphasis added). Moreover, "[t]he plain language of a statute is the starting point for its interpretation." *United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). And "[i]t should . . . be the ending point if the plain meaning of that language is clear." *Edington*, 992 F.3d at 556 (quoting *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011)).

The plain language of § 853(p)(1) is clear. Subparts (A) through (E) are joined by the term "or," not "and." 21 U.S.C. § 853(p)(1). Because the five listed circumstances in § 853(p)(1) are alternatives, the government must only prove *one*. *See id.* The government has satisfied § 853(p)(1) by proving that the original proceeds of the offense "cannot be located upon the exercise of due diligence[.]" *Id.* Thus, the government is not required to prove that the proceeds were also "transferred, diminished, commingled, or otherwise rendered unavailable" [*See* Doc. 186, p. 2].

Although the Sixth Circuit has not addressed the United States's burden under § 853(p), other circuits have addressed the government's burden to establish that it has exercised due diligence in locating the forfeitable property. *See United States v. Gordon*, 710 F.3d 1124, 1166 (10th Cir. 2013) (holding that a financial analyst's affidavit stating that he reviewed the defendant's records and could not find the proceeds was sufficient under § 853(p)); *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (noting that the government satisfied § 853(p) by submitting a motion and affidavit reflecting its

14

efforts to trace defendant's drug proceeds); *United States v. Saunders*, 789 F. App'x 358, 359 (3d Cir. 2019) (holding that the government satisfied the due diligence requirement of § 853(p) with an agent's affidavit including steps he took to locate defendant's drug proceeds); *United States v. Garza*, 407 F. App'x 322, 324–25 (10th Cir. 2011) (noting that an agent's affidavit clarifying that he reviewed the defendant's financial records and found that one parcel of real property was his only asset satisfied § 853(p)).

Here, DeVane's declaration and testimony show that "the property derived from or constituting the proceeds of the offense cannot be located upon the exercise of due diligence." *See* § 853(p)(1)(A). At the March 7th, 2025, hearing, DeVane testified that defendant no longer has the proceeds from his sales of aircraft in 2022 and early 2023. DeVane also testified that during his investigation, he had not located significant assets for defendant other than two substitute assets: defendant's home in St. Cloud, Florida, and aircraft N5056T, which belonged to defendant's business Gator Flights. Further, in his declaration, DeVane stated:

> Despite due diligence, the [g]overnment has been unable to locate the $100,000 in criminal proceeds that [defendant] received as a result of his offense of conviction, because, as a result of acts or omissions of the defendant, the proceeds have been transferred to, or deposited with a third party; placed beyond the jurisdiction of the court, substantially diminished in value (possibly by spending it); or commingled with other property which cannot be divided without difficulty.

[Doc. 130-1 ¶ 8]. As part of his investigation, Devane inspected defendant's transactions with multiple bank accounts, identified victims of defendant's fraud scheme, and inspected defendant's calls from jail [*See id.* ¶¶ 9–11]. The Court finds that these efforts satisfy the due diligence requirement of § 853(p)(1)(A).

Moreover, as recognized in Judge McCook's R&R, defendant's own financial record corroborates DeVane's testimony. This record demonstrates that defendant has no other assets other than his residence and a truck valued at $27,000 [Doc. 163-1, pp. 13–15]. Based on this information, the Court agrees with Judge McCook's conclusion that defendant's residence is a suitable substitute asset for forfeiture. Accordingly, defendant's second objection is **OVERRULED.**

### C. Stipulation of Forfeiture or Waiver of Objections

Defendant objects that his plea agreement did not contain any stipulated forfeiture amount and did not waive his right to contest forfeiture at sentencing [Doc. 186, p. 2]. Specifically, defendant claims that the "government's position, implied at times, that the plea waived further inquiry into the forfeiture amount, is legally incorrect" [*Id.*]. The government responds that defendant agreed to criminal forfeiture, including a personal money judgment of proceeds he personally obtained [Doc. 193, p. 9].

Defendant's plea agreement expressly provides that:

> Unless otherwise limited by an agreed preliminary order of forfeiture, Defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitute or are traceable to the proceeds in violations of 18 U.S.C. §1343. The forfeiture includes but is not limited to the following: Defendant agrees to a personal money judgment against the defendant and in favor of the United States which represents the proceeds the defendant personally obtained as a result of the offense in violation of 18 U.S.C. §1343.

[Doc. 118 ¶ 9]. Thus, the Court finds that defendant clearly agreed to criminal forfeiture, including a personal money judgment of proceeds he obtained, in accordance with the findings in the R&R. Further, the Court finds that defendant's objection regarding the

government's position expresses a continued disagreement with the government's stance and offers no basis for the Court to conclude that Judge McCook's analysis is erroneous. Defendant's third objection is **OVERRULED.**

### D. Violation of Rule 16(a)(1)(E) and *Brady*[2]

Defendant also objects that the government violated Rule 16(a)(1)(E) and *Brady* by failing to disclose an interview with co-defendant Markey, which occurred shortly before defendant entered his guilty plea, at or before the time of the plea agreement [Doc. 186, pp. 2–3]. Defendant alleges that the government "used the information obtained before the plea, concealed it from the defense, and then relied on it post-plea to support a six-figure money judgment" [*Id.* at 3]. The government responds that it did not violate Rule 16, defendant has already made this argument, and the Court has already ruled on it [Doc. 193].

As the government points out, defendant's argument is identical to the argument that he already submitted to Judge McCook in his motion to exclude evidence from forfeiture proceedings and to compel disclosure of undisclosed materials [*Compare* Doc. 152 *with* Doc. 186, pp. 2–3]. Because defendant did not revise or update his argument, the Court cannot discern defendant's objection to Judge McCook's analysis and recommendation, much less "how the [magistrate's] analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue." *Howard*, 932 F.2d at 509. As such, the Court need not consider this objection, which was already submitted prior to Judge McCook's R&R and fully considered and decided by Judge

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

McCook.  Defendant's fourth objection is **OVERRULED.**

IV. **Conclusion**

Accordingly, upon a careful review of the record and law, the Court finds that the recommendations in the R&R are correct.  Defendant's objections to the R&R [Doc. 186] are **OVERRULED**, and the R&R [Doc. 185] is **ACCEPTED in whole**.  The government's motion to amend the order of forfeiture for money judgment to include specific substitute assets [Doc. 126] and motion for entry of amended order of forfeiture for money judgment [Doc. 155] are **GRANTED**.  Defendant's objection to the amount of money judgment [Doc. 127] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE